UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| LIVIER V.,[1] | Case No. 5:18-cv-00965-JDE |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Livier V. ("Plaintiff") filed a Complaint on May 6, 2018, seeking review of the Commissioner's denial of her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The parties filed a Joint Submission ("Jt. Stip.") regarding the issues in dispute on February 22, 2019. The matter now is ready for decision.

---

[1] Plaintiff's name has been partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.
# BACKGROUND

Plaintiff filed her applications for DIB and SSI on May 19, 2014, alleging disability commencing on November 1, 2013. AR 238, 242. On March 10, 2017, after her applications were denied initially and on reconsideration (AR 113-14, 139-40), Plaintiff, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ"), as did a vocational expert. AR 45-84.

On April 14, 2017, the ALJ found Plaintiff was not disabled. AR 21-35. The ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date and found she had a severe impairment of lateral epicondylitis of the bilateral elbows. AR 23. The ALJ also found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment and had the residual functional capacity ("RFC") to perform less than a full range of medium work. AR 28. Specifically, she can: (1) lift, carry, push, and/or pull 30 pounds occasionally, and 15 pounds frequently; (2) sit for four hours in an eight-hour workday, for two hours at a time; (3) stand and/or walk for four hours in an eight-hour workday, two hours at a time; (4) frequently push and pull using the bilateral upper extremities; (5) frequently handle with the bilateral upper extremities; (6) frequently reach overhead bilaterally; (7) frequently climb ramps and stairs; (8) occasionally climb ladders, ropes, or scaffolds; (9) frequently balance, stoop, kneel, crouch, and crawl; and (10) not be exposed to extreme cold or heat. AR 28.

The ALJ found Plaintiff was unable to perform her past relevant work as a general inspector or an assembler and considering Plaintiff's age as a younger individual, education, work experience, and RFC, the ALJ concluded she was capable of performing jobs that exist in significant numbers in the national economy, including: toy assembler; small products assembler; and assembler, plastic hospital products. AR 34-35. Thus, the ALJ found Plaintiff was not

under a "disability," as defined in the Social Security Act ("SSA"), from the alleged onset date through the date of the decision. AR 35. Plaintiff's request for review of the ALJ's decision by the Appeals Council was denied, making the ALJ's decision the agency's final decision. AR 1-5. This action followed.

## II.
## LEGAL STANDARDS

### A. Standard of Review

Under 42 U.S.C. § 405(g), this court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless (Molina, 674 F.3d at 1115), that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may

3

reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

**B. Standard for Determining Disability Benefits**

When the claimant's case has proceeded to consideration by an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Molina, 674 F.3d at 1110.

First, the ALJ considers whether the claimant currently works at a job that meets the criteria for "substantial gainful activity." Id. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015). If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from her impairments. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Social Security Ruling ("SSR") 96-8p.

After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform her past relevant work, either as she "actually" performed it when she worked in the past, or as that same job is "generally" performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016). If the claimant cannot perform her past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists

in "significant numbers" in either the national or regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, she is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See id. at 1099.

The claimant generally bears the burden at each of steps one through four to show she is disabled, or she meets the requirements to proceed to the next step; and the claimant bears the ultimate burden to show she is disabled. See, e.g., Molina, 674 F.3d at 1110; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). However, at Step Five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

## III.

## DISCUSSION

The parties present two disputed issues (Jt. Stip. at 4):

Issue No. 1: Whether the ALJ properly considered the relevant medical evidence of record and medical opinions from treating sources[2]; and

Issue No. 2: Whether the ALJ properly evaluated Plaintiff's subjective statements and testimony.

**A.   Step Two Determination**

In the first part of Issue No. 1, Plaintiff alleges the ALJ erred by not finding various additional severe impairments, including for her migraines, fibromyalgia, and depression. Jt. Stip. at 5-6.

---

[2] Although listed as a single issue by the parties, Issue No. 1 encompasses two challenges to the ALJ's decision: whether the ALJ properly determined Plaintiff's severe impairments (Jt. Stip. at 5-6, 12-13), and whether he properly discounted treating source opinions (id. at 6-11, 14-19).

5

1. Applicable Law

At Step Two of the sequential evaluation, the ALJ determines whether the claimant has a severe, medically determinable impairment or combination of impairments that meets the durational requirement. See 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). In assessing severity, the ALJ must determine whether the claimant's medically determinable impairment or combinations of impairments significantly limits her ability to do basic work activities. See Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005). Step two is a "de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). An impairment or combination of impairments may be found "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb, 433 F.3d at 686 (quoting Smolen, 80 F.3d at 1290). The ALJ "may find that a claimant lacks a medically severe impairment or combination of impairments only when [that] conclusion is 'clearly established by medical evidence.'" Id. at 687 (citation omitted). Harmless error analysis applies to the Step Two determination. Davenport v. Colvin, 608 F. App'x 480, 481 (9th Cir. 2015); Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005).

2. Analysis

At Step Two, the ALJ found Plaintiff had one severe impairment, epicondylitis. AR 23. The ALJ analyzed Plaintiff's other symptoms, including her migraines, fibromyalgia, and depression, along with other mental health limitations, but found none of them severe. AR 24-27. Regarding Plaintiff's mental limitations, the ALJ gave specific consideration to the four functional areas known as the "paragraph B" criteria. AR 26-27. The ALJ also explained that "[t]he limitations identified in the 'paragraph B' criteria are not a[n RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental [RFC] assessment used

at steps 4 and 5 . . . require a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B . . . ." AR 27.

Here, in support of her argument, Plaintiff points to diagnoses, including for fibromyalgia. Jt. Stip. at 5. A diagnosis by itself is insufficient to establish a severe impairment. See Febach v. Colvin, 580 F. App'x 530, 531 (9th Cir. 2014) ("[D]iagnosis alone is insufficient for finding a 'severe' impairment, as required by the social security regulations."); Lang v. Colvin, 2014 WL 4827880, at *17 (N.D. Cal. Sept. 26, 2014) (same); Mesa v. Astrue, 2012 WL 5508392, at *3 (E.D. Wash. Nov. 14, 2012) (same).

However, even assuming, without deciding, that the ALJ erred in not finding fibromyalgia or other impairments to be severe, any such error would be harmless. As noted, the ALJ resolved Step Two in Plaintiff's favor, i.e., the ALJ found Plaintiff's claim survived the "gatekeeping" step designed to dispose of groundless claims by finding other impairments to be severe. The ALJ did not terminate the sequential evaluation at Step Two; rather, he continued the analysis through the final steps of the disability determination. See Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007) (the Step Two finding is "merely a threshold determination" that "only raises a prima facie case of a disability"); Burch, 400 F.3d at 682 (concluding that any error ALJ committed at Step Two was harmless where the step was resolved in claimant's favor); Kemp v. Berryhill, 2017 WL 3981195, at *5 (C.D. Cal. Sept. 8, 2017) (any error in declining to find impairments severe harmless because Step Two is the "gatekeeping" step, and the ALJ continued the analysis).

Second, the ALJ stated he considered "all symptoms" in fashioning the RFC. AR 28. The ALJ also stated the "[RFC] assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." AR 27. Accordingly, any error in declining to find other severe impairments was harmless because the ALJ considered all of Plaintiff's

7

symptoms at Step Four. See Hurter v. Astrue, 465 F. App'x 648, 652 (9th Cir. 2012) (error harmless because, although ALJ did not explicitly consider certain impairments, he stated he had considered all symptoms in formulating RFC); Kemp, 2017 WL 3981195 at *5 (ALJ's finding – that the "RFC assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis" – signaled the ALJ considered claimant's mental health issues in assessing the RFC even though the ALJ did not find them severe); Ball v. Colvin, 2015 WL 2345652, at *2-3 (C.D. Cal. May 15, 2015) (same); Buzby v. Astrue, 2013 WL 4807011, at *5 (D. Idaho Sept. 9, 2013) (same); Lualhati v. Astrue, 2010 WL 3001208, at *4 (N.D. Cal. July 29, 2010) (same); see also Duncan v. Berryhill, 2017 WL 6059140, at *6 (S.D. Cal. Dec. 7, 2017) (ALJ contrasted the "special technique" analysis with the "more detailed assessment" required for the RFC, indicating the ALJ's later analysis of claimant's mental impairment was designed to address the RFC).

For the reasons outlined above, the Court finds any error at Step Two was harmless.

**B.     Medical Opinion Evidence**

In the second part of Issue No. 1, Plaintiff contends the ALJ improperly discounted treating source opinions.[3]

   1.     Applicable Law

In setting an RFC, an ALJ must consider all relevant evidence, including medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributable to the medical condition." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citation omitted).

---

[3] The Court reviews only the opinions actually argued by Plaintiff in the joint submission: Dr. Sisson/Mr. Martinez, Dr. Arteaga-Hernandez, and P.A. Middag. Jt. Stip. at 8-11. Although Plaintiff cites to findings of other doctors in her summary of the evidence, she does not challenge the ALJ's assessment of those providers. Id. at 6-8.

8

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Id. "[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons" supported by substantial evidence in the record. Carmickle v. Comm'r Sec. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 1164 (citation omitted).

Only acceptable medical sources can give "medical" opinions under the SSA; certain providers, such as physical therapists, are not acceptable medical sources. See Sanchez v. Colvin, 2017 WL 3971846, at *7 (C.D. Cal. Sept. 7, 2017). Such "other sources" are not entitled to the same deference as a medically acceptable source; an ALJ may discount such opinions by providing "germane" reasons. Molina, 674 F.3d at 1111 (internal quotation marks and citations omitted); Loop v. Colvin, 651 F. App'x 694, 696 (9th Cir. 2016).

2. Analysis

  a. Dr. Sisson/P.A. Martin and Dr. Arteaga-Hernandez[4]

In September 2013, Physician Assistant Ezequiel Martinez filled out a State of California – Health and Human Services Agency form assessing

---

[4] The ALJ analyzed the opinions from these treatment providers together and rejected them for the same reasons. AR 32. The Court also addresses them together.

9

Plaintiff's physical and mental capacities. AR 489-92. The form was signed by Martinez, and bore stamps from Martinez and Dr. Duane Sisson, Plaintiff's primary care provider. AR 489, 491-92. Checked boxes on the form indicated that Plaintiff could stand/walk for two to four hours a day, sit for two to four hours a day, lift/carry up to 35 pounds occasionally, and perform various postural maneuvers from never to frequently. AR 490-91. There were no assessed mental limitations. AR 492. The form indicated Plaintiff's condition was expected to last from September 2013 or until March 2014. AR 489.

Dr. Edna Arteaga-Hernandez, Plaintiff's family medicine doctor, filled out the same California form on three occasions. AR 566-69, 582-93. In 2015, Dr. Arteaga-Hernandez found that Plaintiff could stand/walk two to four hours, sit two to four hours, could only lift 10 pounds occasionally, could perform almost no postural activities, and noted that she "suffers [from] chronic incapacitating depression." AR 567-68. In 2016, Dr. Arteaga-Hernandez revised the stand/walk and sit limitations to up to two hours at a time, opined Plaintiff could lift no amount of weight, and described Plaintiff as unable to function socially or complete tasks. AR 583-85. In 2017, Dr. Arteaga-Hernandez kept the same stand/walk and sit limitations, found Plaintiff could now lift 10 pounds but could perform no postural activities, and was unable to function due to her mental condition. AR 591-93. In a "Physical [RFC] Statement" with the same 2017 date, the doctor opined Plaintiff could not walk a city block, had problems with balance, could only sit 20 minutes at a time, needed to elevate her legs and use a cane, and could not lift even less than five pounds. AR 586-89.

In assessing the RFC, the ALJ considered 11 different medical opinions, addressed the opinions, and assigned each various weight. AR 27-33. Regarding the opinions of Dr. Sisson/Mr. Martin and Dr. Arteaga-Hernandez, the ALJ found them less persuasive and assigned "little weight" because they

were conclusory, Plaintiff lacked ongoing treatment, and because they did not have substantial support from the objective evidence. AR 32.

Plaintiff contends that the ALJ failed to provide legally sufficient reasons for rejecting the opinions. Jt. Stip. at 8-10. Preliminarily, the Court notes the ALJ did not "reject" the opinions in their entirety. By assigning little weight, the ALJ necessarily gave some consideration to the limitations assessed in the opinions. AR 32. Indeed, the opinion of Dr. Sisson/Mr. Martin concluded Plaintiff could lift and carry up to 35 pounds occasionally, more than the 30-pounds assessed in the RFC. AR 28, 491. Plaintiff fails to show how the ALJ could err by assessing a lower weight limitation than assessed in that opinion.

To the extent the ALJ declined to accept the more severe limitations opined by Dr. Sisson/Mr. Martin and Dr. Arteaga-Hernandez, those reasons are supported by the record.

First, the ALJ properly found that the opinions were conclusory and provided very little explanation of the evidence relied on in forming the opinions. AR 32. Indeed, the opinions largely consisted of check-the-box forms, with many of the "comments," "please explain," and "please describe" portions left blank. AR 490-91, 566-69, 582-85; Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) (citation omitted) ("The ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings."); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly rejected treating physician's opinion that was "conclusory and unsubstantiated by relevant medical documentation").

Second, the ALJ properly found that Plaintiff's admission at the hearing of a lack of ongoing treatment was inconsistent with the greater limitations assessed in the opinions. AR 32. Plaintiff testified that she had not been treated for any elbow issues for a year. She said she didn't know what depression is,

11

and she stated that she was not receiving treatment except medication, consisting of Naproxen and Ibuprofen,[5] which helped. She said was just taking a sleeping pill at night and received no other treatment for mental health issues, and she was not prescribed anything else specifically for headaches. AR 63, 67-69, 74. The ALJ properly considered this overall lack of treatment for allegedly disabling conditions. See Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995) (ALJ may rejecting opinion that conflicts with claimant's testimony); Raja v. Colvin, 2014 WL 3928454, at *5 (C.D. Cal. Aug. 11, 2014) (ALJ properly rejected treating physician's opinion in part because claimant's testimony contradicted physician's assessment).

Third, and finally, the ALJ properly determined that the opinions were without substantial support from the objective clinical or diagnostic findings. AR 32. An ALJ may reject a treating physician's opinion that is unsupported by the record as a whole. Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004). This includes rejecting an opinion because it lacks support in, or conflicts with, the objective medical findings of record. Id. (ALJ may discredit treating physicians' opinions that are unsupported by objective medical findings); Burkhart v. Bowen, 856 F.2d 1335, 1339-40 (9th Cir. 1988) (ALJ properly rejected treating physicians' opinion that was unsupported by medical findings, personal observations or test reports). Here, the ALJ specifically mentioned Plaintiff's generally normal examinations, discussed in further detail in Issue No. 2. AR 32. The ALJ properly relied on this factor for the reasons explained below.

---

[5] Naproxen and Ibuprofen are nonsteroidal anti-inflammatory drugs ("NSAIDs") that can be purchased over the counter. See Gutierrez v. Comm'r Soc. Sec. Admin., 2014 WL 1225118, at *5 (D. Or. Mar. 24, 2014), aff'd, 671 F. App'x 526 (9th Cir. 2016).

12

b. <u>P.T. Loren Middag</u>

In July 2013, Plaintiff began therapy with Physical Therapist Loren Middag. AR 405-15. Plaintiff reported daily activities that included "heavy amounts of cleaning, lifting, and fine motor use," and in recent weeks she was having pain stemming from her neck to her hands. AR 405. In August 2013, during Plaintiff's second visit, Ms. Middag filled out the same California physical capacities checklist form discussed above, noting limitations that Plaintiff could only stand/walk and sit for less than two hours per day, could lift up to 20 pounds, had various postural limitations, occasionally reach overhead, and would have limited grasping and gripping. AR 417-18. The ALJ gave this opinion "less weight" than the other opinions because, as a physical therapist, Ms. Middag was not an acceptable medical source, the opinion predated the relevant period, and the treatment history was brief. AR 33.

First, the ALJ properly observed that Ms. Middag was not an acceptable medical source. Thus, the ALJ could afford it less weight than acceptable medical source opinions and needed to provide only germane reasons for discounting it. See <u>Loop</u>, 651 F. App'x at 696; <u>Drake v. Comm'r Soc. Sec.</u>, 2014 WL 3591547, at *4 (D. Or. July 21, 2014) (ALJ properly discounted physical therapist's findings).

Second, while an ALJ must consider all medical opinion evidence, <u>Robbins</u>, 466 F.3d at 883, "opinions that predate the alleged onset of disability are of limited relevance." <u>Carmickle</u>, 533 F.3d at 1165. Here, Ms. Middag formed her opinion about Plaintiff's limitations based on her condition in August 2013. AR 417-18. As mentioned, Plaintiff alleges she became disabled in late 2013. AR 238, 242. Discounting an "other source" opinion because it predates the alleged disability onset date is a germane reason. See <u>id.</u>; <u>Loop</u>, 651 F. App'x at 696 (ALJ provided germane reason for according little weight to therapist's opinion because it predated alleged disability onset date);

13

Gunderson v. Astrue, 371 F. App'x 807, 809 (9th Cir. 2010) (ALJ did not err by discounting medical opinion of doctor who conducted examination before the alleged onset date); Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (Commissioner properly rejected opinion of doctor who had treated claimant before relevant period).

Third, and finally, the ALJ properly relied on the limited treatment history with Ms. Middag before she assessed such severe limitations. The physical capacities checklist was completed at only Plaintiff's second visit. AR 413 (noting 8/15/13 as "Visit No.: 2"); 416-18 (physical capacities form completed 8/15/13). This was a germane reason for discounting opinion. See Harrison v. Colvin, 622 F. App'x 664, 665 (9th Cir. 2015) (ALJ properly relied on treatment notes to reject other source opinion); Molina, 674 F.3d at 1111-12 (recognizing that a conflict with treatment history is a germane reason to reject a physician assistant's opinion); Cooper v. Astrue, 2012 WL 5818286, at *5 (D. Or. Nov. 15, 2012) ("little evidence of treatment history" a germane reason for discounting therapist's opinion).

The ALJ provided legally sufficient reasons supported by substantial evidence for assigning less weight to the opinions, and the ALJ's analysis constituted a rational interpretation of the evidence. See Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) ("Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld."). Reversal is not warranted on this ground.

**C. Plaintiff's Subjective Symptom Complaints**

In Issue 2, Plaintiff argues the ALJ improperly discounted her subjective complaints. Jt. Stip. at 20-22.

1. Applicable Law

Where a disability claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain

or other symptoms alleged, absent evidence of malingering, the ALJ must provide "'specific, clear and convincing reasons for' rejecting the claimant's testimony regarding the severity" of the symptoms. Treichler v. Comm'r Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (citation omitted); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude that the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Id. at 885 (citation omitted). But if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the Court's role to "second-guess" it. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Finally, the ALJ's credibility finding may be upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. See Batson, 359 F.3d at 1197.

  2. <u>Analysis</u>

  Plaintiff testified she cannot work due to pain in her head, shoulders, neck, arms, back, hands, and feet. AR 60, 62, 64-67. She has difficulty driving due to arm weakness and because she cannot stretch her arms out to hold the steering wheel. AR 54. She had steroid injections in her right arm, which helped "a bit," but the pain continued. AR 62. She takes pain and anti-inflammation medication and participated in physical therapy. AR 63. She has difficulty walking; she can walk a block before she experiences too much pain. AR 64-65. She can sit 30 minutes before needing to change positions due to the pain in her neck and back. AR 65, 69-70. When she has pain, she takes medication or gets into a tub with hot water. AR 65-66. She also has depression, fibromyalgia, and migraine headaches. AR 59, 63, 67, 71-74.

  The ALJ considered Plaintiff's testimony, along with her similar subjective complaints in disability reports and headache questionnaire. AR 29 (citing AR 264-96). The ALJ found Plaintiff's medically determinable

15

impairments could reasonably be expected to cause some of the alleged symptoms, but her statements "concerning the intensity, persistence[,] and limiting effects of [the] symptoms" were not entirely consistent with: (1) the medical evidence and other evidence in the record; (2) gaps in treatment; (3) conservative treatment; and (4) her activities of daily living.[6] AR 29-30. As explained below, the ALJ provided legally sufficient reasons for discounting Plaintiff's subjective-symptom complaints.

First, the ALJ found the severity of Plaintiff's subjective allegations was not consistent with the medical evidence, including the objective, clinical, and diagnostic findings. AR 29-30. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch, 400 F.3d at 681; see also Rollins, 261 F.3d at 857. For example, (1) Plaintiff complained of right arm pain in March 2013, but imaging showed normal findings and she had a steroid injection and was advised to wear a brace (AR 30, 312, 381-82); (2) Plaintiff continued to allege pain but attended only four physical therapy sessions, where Ms. Middag noted good rehabilitation potential if Plaintiff continued with the therapy (AR 30, 410); (3) in February 2014, Plaintiff had only diffuse tenderness with touch over the upper trapezius muscle and scapular region (AR 31, 545); (4) a few months later, Plaintiff complained of left-shoulder pain, and she had restricted active range of motion in that shoulder, but subsequent imaging was normal (AR 31, 551, 523); (5) a July

---

[6] Plaintiff does not address reasons 2 and 3 (Jt. Stip. at 20-22), even after those reasons were raised by the Commissioner (id. at 23-26). See Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006) (claimant waived issues not raised before the district court); Owens v. Colvin, 2014 WL 5602884, at *4 (C.D. Cal. Nov. 4, 2014) (claimant's failure to discuss, or even acknowledge, ALJ's reliance on certain reasons waived any challenge to those aspects of ALJ's finding).

2014 examination noted no physical abnormalities (AR 554); and (6) Dr. Vincent Bernabe examined Plaintiff in August 2014, and found only some tenderness to touch in the elbow, right worse than left, but otherwise no tenderness, full range of motion, and full strength throughout (AR 31, 441-42). The ALJ properly considered the inconsistency between this medical evidence and Plaintiff's subjective symptom complaints as one of at least three valid factors supporting the decision. See Burch, 400 F.3d at 681.

Second, the ALJ discounted Plaintiff's subjective symptoms because there were gaps in treatment, and minimal, sporadic overall treatment. AR 24-25, 29. The ALJ specifically noted a treatment gap, uncontested by Plaintiff, lasting over 15 months. AR 29. The ALJ properly relied on this reason to discount symptom testimony. See Marsh v. Colvin, 792 F.3d 1170, 1173 n.2 (9th Cir. 2015) (ALJ properly considered treatment gap in assessing claimant's symptoms); Burch, 400 F.3d at 681 (ALJ properly relied on three- to four-month treatment gap in discrediting claimant's testimony).

Third, the ALJ discounted Plaintiff's complaints because she received routine, conservative treatment. AR 29. Plaintiff underwent physical therapy and took Naproxen and Ibuprofen. AR 69, 74. The ALJ properly relied on conservative treatment to discount symptom testimony. See Parra, 481 F.3d at 750-51 ("evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); Hanes v. Colvin, 651 F. App'x 703, 705 (9th Cir. 2016) (credibility determination supported in part by evidence of conservative treatment consisting primarily of minimal medication, limited injections, physical therapy, and exercise); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (finding claims of persistent, severe pain and discomfort belied by conservative treatment); Gutierrez, 2014 WL 1225118, at *5 (ALJ properly discounted subjective complaints based on conservative treatment, which included physical therapy, Naproxen, and Ibuprofen).

Fourth, and finally, the ALJ relied on Plaintiff's daily activities in discounting her subjective complaints, specifically mentioning her ability to maintain her home, care for her two minor children, drive, prepare simple meals, and go to church. AR 29, 52-54, 70-71. Some of these activities may have bearing on the veracity Plaintiff's subjective symptoms. See, e.g., Rollins, 261 F.3d at 857 (the ability to care for children may undermine complaints of severe limitations); Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (same, where claimant's activities included occasional care for a friend's child). However, "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." Trevizo v. Berryhill, 871 F.3d 664, 682 (9th Cir. 2017) (internal quotation marks and citation omitted). The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). "[O]nly if his level of activity [was] inconsistent with [a claimant's] claimed limitations would these activities have any bearing on his credibility." Garrison, 759 F.3d at 1016.

Here, without reaching the issue, even if the ALJ erred in relying on this reason, if other "substantial evidence supporting the ALJ's conclusions" exists and the error "does not negate the validity of the ALJ's ultimate [credibility] conclusion," any error is harmless and does not warrant reversal. Batson, 359

F.3d at 1195-97; Williams v. Comm'r Soc. Sec. Admin., 2018 WL 1709505, at *3 (D. Or. Apr. 9, 2018) ("Because the ALJ is only required to provide a single valid reason for rejecting a claimant's pain complaints, any one of the ALJ's reasons would be sufficient to affirm the overall credibility determination."). As there are at least three other proper bases for the ALJ's discounting of Plaintiff's subjective complaints, the Court does not consider the purported basis based upon inconsistency with activities of daily living.

The Court finds the ALJ provided sufficiently specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony, specifically, the conflict with medical evidence, gaps in treatment, and conservative treatment. Those grounds, together, are sufficient to affirm the ALJ's decision on the issue.

## IV.

## ORDER

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

Dated: March 27, 2019

_____
JOHN D. EARLY
United States Magistrate Judge